**Roy GUFFEY et al., Appellants,**

v.

**UTEX EXPLORATION COMPANY et al.,
Appellees.**

No. 14195.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 12, 1964.

Rehearing Denied March 11, 1964.

Claud H. Gilmer, Rocksprings, Coke R.
Stevenson, Pierce Stevenson, Junction, for
appellants.

1

Hart & Hart, Austin, M. C. Blackburn, Junction, for appellees.

MURRAY, Chief Justice.

This suit was instituted by appellants, Roy Guffey and Bill L. Holland, against Utex Exploration Company, a private corporation, and Julian C. Ashby, appellees, seeking to enforce an oral contract for the purchase of gas from the Fred Mudge No. 1 well located in Kimble County, Texas, on a tract of land known and described as Section 10, Block No. 4, T. W. & N. G. Ry. Co. Survey, and an offset well to be drilled later. The Mudge well No. 1 was capable of providing 2,650,000 cubic feet of gas per day, but was shut-in for want of a market. The contract was alleged to have been entered into on June 28, 1961, with Julian C. Ashby personally and as agent for Utex Exploration Company, and was to continue for the life of the well or not more than twenty years, whichever was the shortest period. Appellants allegedly agreed, among other things, to take a minimum of 250,000 cubic feet of gas per day, and to construct or cause to be constructed the necessary pipelines to the two wells. Appellees drilled to completion the off-set well, known as Louise Kenedy Well No. 1, on Section 23, Block 4, T. W. & N. G. Ry. Co. Survey in Kimble County. Appellees thereafter refused to carry out the provisions of the oral contract.

When appellants rested their case in the trial court, appellees made a motion for an instructed verdict which was granted by the court and judgment rendered that appellants take nothing, from which judgment Roy Guffey and Bill L. Holland prosecuted this appeal.

■ Appellants' first point is that the trial court erred in holding that the contract was barred by the Statute of Frauds and the Statute of Conveyances. The contract was not in writing, and was apparently to continue for twenty years, and was for the sale of gas in place. If the contract was for a period of twenty years it would be in violation of Art. 3995, Vernon's Ann.Civ. Stats., Sec. 4, requiring a contract for the sale of real estate to be in writing, and Sec. 5, requiring any agreement not to be performed within one year to be in writing. It would also be in violation of Art. 1288, Vernon's Ann.Civ.Stats., requiring, among other things, that a conveyance of real estate be in writing. Thus the all important question here is whether this alleged contract was one relating to the sale of an interest in real estate.

Appellants make a very full and frank statement of the facts relating to this oral contract which we here adopt.

## "STATEMENT UNDER POINT NO. 1

"The following is reflected by the deposition of plaintiff Bill L. Holland, offered by plaintiffs on the trial. The deposition is included in the statement of facts as Exhibit No. 1; and the deposition itself has six exhibits, all of which were admitted in evidence:

"About the middle of May, 1961, plaintiffs learned from defendant Ashby, General Manager of defendant Utex Exploration Company, that defendant Utex Exploration Company was interested in selling gas from its gas well in Kimble County, Texas, known as the Mudge Well No. 1. The Mudge No. 1 was then a completed well with a potential capacity of 2,650,000 cubic feet of gas per day. On June 1, 1961, plaintiffs made an appointment to see defendant Ashby in his office in Abilene, Texas, for the purpose of discussing the purchase of the gas; and on the next day, they went to Abilene and had a conference with Ashby in his office. On this occasion, plaintiffs disclosed to defendant Ashby that Junction Natural Gas Company and Texas-New Mexico Pipeline Company were prospective purchasers from plaintiffs.

"Defendant Ashby thought he could trade with plaintiffs at a price of ten cents per thousand cubic feet; but he said he would have to talk to his boss, Mr. Steen, and would advise plaintiffs in a few days. A minimum take of gas was discussed; and Ashby said they would have to have a certain minimum of 250,000 cubic feet per day, which plaintiffs had stated they could guarantee. They talked in terms of the contract running until the franchise between Junction Natural Gas Company and the City of Junction expired, which is 1980, provided the well and reserves could supply them that long; but if not, plaintiffs' deal with defendants would be completely performed and completed. They discussed several features of the franchise, particularly the quality of the gas, its freedom from sand, and the fact that plaintiffs would have to be assured of enough to fulfill the franchise needs; otherwise the franchise would be terminated, and the deal between plaintiffs and defendants would be concluded and performed. Defendant Ashby requested plaintiffs to say nothing about the negotiations they were having until he got his farm-out with Skelly worked out and also asked them to say nothing about his working on a farm-out with Skelly. He wanted that kept secret.

"On June 5, 1961, defendant Ashby, General Manager of defendant Utex Exploration Company, wrote plaintiff Bill L. Holland that defendants were interested in negotiating a contract selling the gas for ten cents per thousand cubic feet, with a specified minimum take and an escalator clause for price increases. On June 28, 1961, plaintiffs again had a meeting with defendant Ashby at defendants' office in Abilene, Texas. On that occasion, plaintiffs advised Mr. Ashby that they were continuing to make progress with their deal.

"At this point in the introduction of the deposition, defendants objected on the ground that the agreement was an oral agreement relating to the sale of an interest in real estate and was therefore covered by the Statute of Frauds and the Statute of Conveyances. The objection was sustained; and defendants thereupon objected to all the rest of the deposition of Bill L. Holland upon the same grounds, and also objected to it as showing an agreement not to be performed before the end of a year in violation of the Statute of Frauds. The court sustained the objection to the remainder of the deposition, but admitted the exhibits.

"The testimony of plaintiff Bill L. Holland by deposition, excluded by the court as being inadmissible by reason of the Statute of Frauds and the Statute of Conveyances, reflects that on June 28, 1961, plaintiffs agreed to take the minimum of two hundred fifty thousand cubic feet of gas that Mr. Ashby had previously set; that when plaintiff Roy Guffey suggested some kind of a contract which plaintiffs could show to their people, Ashby said, 'You have my letter. That is all the contract you need'; and that no other writing passed between the parties on that date. Also, on June 28, 1961, Ashby advised the plaintiffs that it looked like he was going to be able to drill the off-set well. After several inquiries by plaintiff Bill L. Holland as to progress with the plans to drill an off-set well to the Mudge Well, he received from defendant Utex Exploration Company on August 2, 1961, a letter advising that 'We are moving the rig to the location in Kimble County, Texas, tomorrow.' On August eleventh of twelfth, Ashby advised plaintiffs that the off-set well was being drilled. On the same date, plaintiffs pointed out to Ashby that since they had a contract with him, they felt that

they were entitled to know something about how the well might be running; and Ashby promised that the information would be made available to them when the well was completed, although it was a 'tight hole', meaning that information concerning the well is not released. On August 17, 1961, plaintiffs again met Ashby in his office in Abilene. He gave them the potential of the off-set well; and upon their comment that it looked like a better well than the Mudge well, Ashby said, 'Yes, in fact it is so good that we are looking for a transmission line connection, and your little minimum take is not enough to justify us to tie up our tremendous gas reserves here.' Reminded by plaintiffs that they had a contract, he said, 'Yes, you're right; but the boss won't go for that.'

"On August 23, 1961, plaintiffs and Junction Natural Gas Company reached a firm agreement whereby plaintiffs were to furnish the gas company a minimum of one hundred fifty thousand cubic feet of gas per day at a price of thirty cents per thousand cubic feet. On August 29, 1961, Holland notified Ashby that he was ready to tie into the well. On August 30, 1961, defendant Utex Exploration Company wrote Holland that they would investigate other possibilities for a market. On December 3, 1961, defendant Utex Exploration Company entered into a contract with Junction Natural Gas Company to sell gas to the latter company at twenty cents per thousand cubic feet with a minimum take of two hundred fifty thousand cubic feet per day.

"At all times pertinent hereto, defendant Julian C. Ashby was General Manager of the Petroleum Division of Utex Exploration Company. From the time of the first conference with Holland and Guffey on June 2, 1961, Ashby knew that plaintiffs were negotiating with Junction Natural Gas Company and Texas–New Mexico Pipeline Company with a purpose to resell to them the gas from defendants' wells, which was the subject matter of plaintiffs' and defendants' agreement. Defendants furnished Texas-New Mexico Pipeline Company with data from which to evaluate the reserves of the off-set well but advised that Company not to furnish Mr. Holland with a copy of its evaluation."

■ The contract was one for the sale of gas in place, which is a part of the real estate, and is such a contract as is required to be in writing. At the time the contract was made the first well was completed but shut-in and the second well had not been completed. The gas was not produced, but was to be produced when appellants built a pipe line and connected it with such wells.

Appellants rely upon the case of Dashko v. Friedman, 59 S.W.2d 203, decided by the Texarkana Court of Civil Appeals in 1933, no writ history, which unquestionably held that an oral sale of oil and gas if and when produced was not a sale of an interest in real estate and was not required to be in writing. While this case has never been expressly overruled by the Supreme Court of Texas, we feel that it has been overruled in effect.

In Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, the Supreme Court held that an easement by a lessee to deliver to the credit of the lessor free of cost, in the pipeline to which he may connect his well, the equal one-eighth part of all oil produced and saved from the leased premises, conveyed an interest in real property. The Court held that it would be inconsistent with the public policy of the State to hold that the contract created mere rights in personalty at some uncertain date in the future when the oil and gas would be pro-

duced at the surface. We can see no difference between selling a one-eighth interest in all the oil and gas produced from a well, and the sale of a definite quantity of oil and gas when produced from a well, insofar as the law of conveyance is concerned. See also Tennant v. Dunn, 130 Tex. 285, 110 S.W.2d 53; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W. 2d 27.

It is plain that appellants are claiming under their oral contract, the right to build a pipeline on the lease and connect with appellees' well. This within itself would convey an interest in the oil and gas leasehold. Southwest Pipe Line Co. v. Empire Natural Gas Co., 33 F.2d 248 (8th Cir.).

Further, we are of the opinion that this was a contract not to be performed within one year and therefore required to be in writing. The fact that these wells might cease to produce gas within the first year, and thus not perform the contract but terminate it, did not render it a contract to be performed within one year. From all of the facts, it is shown that the parties expected the contract to run for twenty years, and no one expected or contemplated that these two wells would cease to produce within a period of one year. Gilliam v. Kouchoucos, 161 Tex. 299, 340 S.W.2d 27; Chevalier v. Lane's Inc., 147 Tex. 106, 213 S.W.2d 530, 6 A.L.R.2d 1045.

The contract herein being void because not in writing, there can be no recovery of damages based upon a breach thereof. Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624, 118 A.L.R. 1505; Little v. Childress, Tex.Civ.App., 12 S.W. 2d 648, aff. Tex.Com.App., 17 S.W.2d 786.

The trial court did not err in granting appellees' motion for an instructed verdict and in rendering judgment that appellants take nothing. The judgment of the trial court is affirmed.