U. S. PIPELINE CORPORATION, Appellant

v.

George N. KINDER

and

Harrell Petty, d/b/a Kinder & Petty, Appellee.

No. 18380.

Court of Civil Appeals of Texas, Fort Worth.

Nov. 26, 1980.

Rehearing Denied Dec. 31, 1980.

Pickering, Vendig & Starks, and Benjamin E. Pickering, Dallas, for appellant.

Jennings, Montgomery, Dies & Turner, and Elton M. Montgomery, Graham, for appellee.

## OPINION

SPURLOCK, Justice.

This is a declaratory judgment suit. George N. Kinder and Harrell Petty d/b/a Kinder & Petty (seller) sued M. A. Riddle, individually and d/b/a Riddle Oil Company and U. S. Pipeline Corporation (buyer) for a declaratory judgment to cancel a gas purchase agreement. U. S. Pipeline Corporation, who was named as defendant, is the assignee of the Riddle parties who had purchased the rights from Ravenswood, the original purchaser in the gas purchase agreement. Seller contends that the contract is void because of the statute of frauds and that the contract had been abandoned by pipeline's predecessor. Trial court rendered judgment that the contract was void.

We affirm.

Ravenswood Gas Company as buyer entered into the initial contract on February 23, 1973, with Harrell Petty and George Kinder as seller, in which the seller agreed to sell gas to the buyer. Ravenswood Gas Company conveyed its interest in this contract to Riddle and U. S. Pipeline Corporation on February 18, 1977. The pipeline company was incorporated on February 10, 1977. The Riddle interest was conveyed to U. S. Pipeline, which will be referred to herein as buyer and as pipeline. The Riddles filed a disclaimer.

The case was tried before the court without a jury and the court filed findings of fact and conclusions of law.

The trial court found that the legal description in the contract was insufficient and therefore the contract was void because it does not meet the requirements of Tex. Bus. & Comm.Code Ann. sec. 26.01 (1968). This is usually referred to as the statute of frauds. It also did not meet the requirements of the statute of conveyances. Tex. Rev.Civ.Stat.Ann. art. 1288 (1980).

Buyer contends that it was buying severed gas which was personalty and was not an interest in the real estate. The seller contends the contract attempts to convey an interest in real estate that constitutes a covenant running with the land. The pertinent paragraphs and parts of the contract in summary form provide:

"(1) Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller, . . . the natural gas that may be produced from Seller's entire dedicated acreage, . . . ." Here follows an inadequate description of the acreage. Pipeline in its brief admits the description is inadequate.

"(2) Seller shall build and maintain at its sole expense all necessary lines to connect its wells to Buyer's pipeline. Seller shall install the equipment necessary to separate the oil and other liquid from the gas before it enters Buyer's pipeline, compress the gas, and generally look after the gas delivered from the wells to said meter."

(3) It provides for the price of 18¢ per thousand cubic foot of gas delivered to buyer at the meter during a 30 year term.

(6) Seller agrees to compress and pump the gas deliverable under this agreement at a designated pressure and if it failed to do so, the buyer could compress or pump it prior to its reaching the buyer's meter and deduct 10¢ per thousand cubic foot of such compressed or pumped gas.

(9) The agreement became effective on the date of the contract and shall continue in effect for a period of 30 years.

"(11) All the terms, provisions, conditions and obligations of this agreement shall extend to and be binding upon the successors and assigns of the parties hereto. No assignment shall serve to relieve the assigning parties of its obligations hereunder."

(13) Seller warrants title before the title passes to the buyer.

(14) Title to the gas delivered shall pass to the buyer at the point of delivery and seller shall be deemed to be in exclusive control and possession of gas delivered until delivered to the buyer at the point of delivery.

Seller cites as authority *Martin v. Amis*, 288 S.W. 431, 434 (Tex.Comm'n App. Sec. A, 1926, opinion adopted). The court held that a buyer of raw gas had an agreement to convert it to gasoline and pay the lessor ⅛ of ¼ of the proceeds of the sale of the gasoline and this was an executory contract of sale of personalty and the buyer held no interest in the state of the royalty from which the raw gas was produced.

Buyer cites *Dashko v. Friedman*, 59 S.W.2d 203 (Tex.Civ.App.—Texarkana 1933, no writ), which is a statute of frauds case which held that if the intention of the parties was to the effect that if the conveyance was to an interest in minerals in place, it would be within the statute of frauds. If their intention was to deal only with the minerals after they had been produced then it would not be within the statute of frauds.

The seller relies upon *Guffey v. Utex Exploration Company*, 376 S.W.2d 1; 4–5 (Tex.Civ.App.—San Antonio 1964, writ ref'd n. r. e.). This is a statute of frauds case concerning an oral contract concerning the sale of gas. That court held that *Dashko v. Friedman, supra*, with no writ history, held an oral sale of oil and gas when produced was not a sale of interest in real estate. The court ruled that although the case has never been expressly overruled by the supreme court, it has been overruled in effect. That court said, with approval:

"In *Sheffield v. Hogg*, 124 Tex. 290, 77 S.W.2d 1021, the Supreme Court held that an easement by a lessee to deliver to the credit of the lessor free of cost, in the pipeline to which he may connect his well,

the equal one-eighth part of all oil produced and saved from the leased premises, conveyed an interest in real property. The Court held that it would be inconsistent with the public policy of the State to hold that the contract created mere rights in personalty at some uncertain date in the future when the oil and gas would be produced at the surface. We can see no difference between selling a one-eighth interest in all the oil and gas produced from a well, and the sale of a definite quantity of oil and gas when produced from a well, insofar as the law of conveyance is concerned. See also *Tennant v. Dunn*, 130 Tex. 285, 110 S.W.2d 53; *Waggoner Estate v. Sigler Oil Co.*, 118 Tex. 509, 19 S.W.2d 27."

The court in *Guffey v. Utex Exploration Company, supra*, held the contract was void because it was in violation of the statute of frauds.

The contract there involved provided for the sale and purchase of gas for a period of twenty yeas.

The seller also relies upon *Groce v. West Lumber Co.*, 165 S.W. 519, 521 (Tex.Civ. App.—Galveston 1913, writ ref'd) and *Burkitt v. Wynne*, 62 Tex.Civ.App. 560, 132 S.W. 816 (Tex.Civ.App.1910, writ ref'd), which holds that the purchase by a lumber company of growing trees is a verbal sale of an interest in real estate if it does not contemplate the immediate separation of the growing trees from the soil.

■ Gas that has not been produced and is in place in the ground is realty. There is no dispute between the parties concerning this proposition of law.

■ We hold the contract was void because it is in violation of the statute of frauds and statute of conveyances because it amounted to a contract for an interest in realty.

■ By its second point of error buyer asserts the court erred in not enforcing the contract even if it is in violation of the statute of frauds because of the rule of law announced in *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (1921).

The supreme court there announced the rule that a parol contract for the sale of land can be enforced and the sale taken out of the statute of frauds if the following three elements exist: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced.

Ravenswood, predecessor to U. S. Pipeline, constructed a pipeline on the premises but charged the cost of it to the seller and the seller paid for the pipeline, all in accordance with paragraph 2 of the contract in which the seller agreed to build and maintain necessary pipelines. Seller's pipeline was laid on the surface of the ground. The meters of the buyer were easily detachable, and the buyer therefore did not make valuable and permanent improvements on the land. Thus the rule of law announced in *Hooks v. Bridgewater, supra*, does not take the contract out of the statute of frauds because at least one element is missing. This point is overruled.

■ By its third point buyer contends that as a matter of law it was entitled to reformation of the contract so as to supply an adequate description of the property. It contends the parties had agreed to supply a written legal description at a later date, which was never done. A supplemental agreement was signed by the parties in which it was agreed that seller would execute an amendment to the gas purchase contract containing a proper legal description when it had been prepared. No such amendment was ever executed and was never mentioned until after this suit had been filed. The question then is may the parties contract away the requirement of the statute of frauds? An agreement to make a written amendment for descriptive purposes is in and of itself subject to the statute of frauds when real estate is involved. This point is overruled.

By its fourth point buyer contends the trial court erred in cancelling and rescinding the contract from and after September 1976 because it was not supported by the pleadings.

Seller pled the facts rather extensively, then in its prayer asked for judgment cancelling the agreement and removing the same as a cloud upon the title. The issue of abandonment of the lease as grounds for cancellation was tried without objection and was therefore tried by consent. Ravenswood Gas Corporation abandoned the purchase of gas on September 30, 1976, and went into bankruptcy shortly thereafter. It assigned its lease to U. S. Pipeline. At the time of assignment, the meters had been removed and there were no gas connections to seller's wells or to seller's pipeline. This situation existed until May of 1978 when U. S. Pipeline started taking some gas.

Seller pled there was a lack of consideration, or complete failure of consideration, growing out of the Ravenswood termination and/or abandonment of any and all performance under said agreement from and after September 1976.

The trial court in its findings of fact found there was a lack of consideration or failure of consideration, that the operation had been abandoned, and that the Ravenswood contract had been terminated. This finding of fact has not been challenged. Such a finding would normally be challenged on the grounds of no evidence or insufficient evidence. Any unchallenged finding of fact which will support the judgment will preclude a reversal of the case. *Kroger Company v. Warren*, 420 S.W.2d 218 (Tex.Civ.App.—Houston [1st Dist.] 1967, no writ).

Each point of error has been severally considered and each is overruled.

Judgment affirmed.